<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN HOME ASSURANCE CO., by and through its Aviation Claims Manager, AIG AVIATION, | |
| Plaintiffs, | Hon. Dennis M. Cavanaugh |
| | Civil Action No. 09-cv-258 (DMC) |
| -vs- | |
| UNITED STATES OF AMERICA, et al., | **OPINION** |
| Defendants. | |

<u>**FALK, U.S.M.J.**</u>

Before the Court is the United States' informal motion to compel the production of an accident report prepared by Plaintiff American Home Assurance Co.'s ("American Home") insurance claims investigator. American Home has opposed production of the report on work-product grounds. For the reasons that follow, the United States' motion to compel is **granted**.

<u>BACKGROUND</u>

This is a subrogation action arising out of a collision between a Dassault Falcon 900 aircraft insured by American Home and a paving roller on a runway at Teterboro Airport on September 28, 2007. American Home was notified of the accident the day it occurred and dispatched an independent claim specialist, Kevin M. Olsen, to the accident site. American Home also separately

sent two lawyers to the site.[1] Mr. Olsen commenced an investigation and began preparation of a report. Later the same day, counsel at the scene asked Mr. Olsen to direct his report to their attention because they believed a subrogation action was a "distinct possibility." (Pl.'s Letter at 1.) Mr. Olsen's report was completed on October 12, 2007. On January 16, 2009, this action was commenced.

American Home argues the report was prepared at the direction of counsel and is protected by the work-product doctrine. The United States counters that American Home sent Mr. Olsen to the scene immediately upon its learning of the accident in order to evaluate a potential claim against its policy, which is an ordinary function of its insurance business. The report has been submitted to the Court for *in camera* review.

## DISCUSSION

The work-product doctrine is embodied in Federal Rule of Civil Procedure 26(b)(3), which provides, in part:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

Fed. R. Civ. P. 26(b)(3).

The party asserting work-product immunity bears the burden of showing the materials in question qualify for protection. See La. Mun. Police Employees Ret. Sys. v. Sealed Air, 253 F.R.D. 300, 306 (D.N.J. 2008). The work-product doctrine requires that the materials in dispute be prepared

---

[1] Mr. Olsen was retained by American Home; he had no affiliation with counsel. The lawyers sent to the scene of the accident are counsel to American Home in the present action.

or obtained: (1) in anticipation of litigation; and (2) primarily for the purpose of litigation. See id. The "anticipation of litigation" prong demands more than the "inchoate possibility" or "likely chance" of litigation and is satisfied only if the withholding party can establish "an identifiable specific claim of pending litigation." In re Gabapentin Patent Litig., 214 F.R.D. 178, 184 (D.N.J. 2003). The "purpose of litigation" prong requires that the specific facts and circumstances of a given case establish that the document was prepared or obtained because of litigation and not for business or other reasons. See id. (quoting In re Grand Jury Proceedings, 604 F.2d 798, 803 (3d Cir. 1979)). Documents created in the ordinary course of business that prove useful in future litigation are not protected by the work-product doctrine. See United States v. Rockwell Int'l, 897 F.2d 1255, 1266 (3d Cir. 1990). Having carefully reviewed the Olsen report, the Court concludes that it is not protected for the following reasons.

First, the report was prepared in the general course of American Home's insurance business and not for the purpose of litigation. It is routine for an insurance company to send an agent or investigator to the scene of an accident to gather information and prepare a report. See, e.g., AIU Ins. Co. v. TIG Ins. Co., No. 07-7052, 2008 WL 4067437, at *12 (S.D.N.Y. Aug. 28, 2008) (noting that "it is the routine business of insurance companies to investigate and evaluate claims"); Westhemeco, Ltd. v. New Hampshire Ins. Co., 82 F.R.D. 702, 708 (S.D.N.Y. 1978) ("The nature of the insurance business is such that an insurance company must investigate a claim prior to determining whether to pay its insured."). It is well-settled that reports generated in the course of general investigations, even if litigation is arguably anticipated, are not entitled to work-product protection. See, e.g., Am. Ins. Co. v. Elgot Sales Corp., No. 97-1327, 1998 WL 647206, at *2 (S.D.N.Y. Sept. 21, 1998) ("Even though litigation is already a prospect, there is no work-product

immunity for documents prepared in the regular course of business rather than for purposes of the litigation."); Harper v. Auto-Owners, Inc. Co., 138 F.R.D. 655, 661 (S.D. Ind. 1991) ("Even after litigation is justifiably anticipated, routine or ordinary investigations or reports are not work-product and may be obtained as normal discovery without a special showing of need."). There is no evidence that the Olsen report was prepared primarily -- or even tangentially -- for the purpose of litigation. Rather, it is a general investigation report prepared by an insurer's representative in the normal course of business. Thus, it is not protected from disclosure. See Edna Selan Epstein, The Attorney-Client Privilege & Work Product Doctrine at 871 (5th ed. 2007) ("As a general rule, ordinary investigations that a business may conduct, even if there is a small prospect of litigation, will not be accorded work-product protection.").

Second, American Home fails to establish that the report was prepared because of the prospect of litigation. The steps an insurance company takes immediately upon learning of the accident "are almost always part of its ordinary business of claim investigation . . . ." Weber v. Paduano, No. 02-3392, 2003 WL 161340, at *6 (S.D.N.Y. Jan. 22, 2003). Mr. Olsen was retained by American Home, not counsel, and sent to the scene immediately upon the company receiving notice of the accident and before the company had made a determination of whether the claim would be paid. Mr. Olsen's report was completed only two weeks after the accident occurred and more than a year prior to the commencement of suit. Even assuming American Home believed at the time of the accident that it may face some sort of claim, that rather universal suspicion does not negate the fact that the investigation was part of a routine insurance investigation, i.e., for general business purposes. Cf. Thomas Organ Co. v. Jadranska Slobodna Plovidba, 54 F.R.D. 367, 373 (N.D. Ill. 1972) ("The mere fact that [the insurer] may have anticipated the possibility of pursuing a

subrogation claim against the defendants . . . is a far cry from anticipating litigation."). That the investigation was done within hours of the accident is telling. There were no claim letters, no contacts by opposing lawyers, nothing of that nature. The accident had just occurred. To assume that litigation may ensue from any accident may not be unreasonable, but the concept that the mere occurrence of an accident constitutes anticipation of litigation has been soundly rejected by the authorities cited herein.

Third, simple involvement of counsel in an insurer's claim investigation does not transform the investigation to one undertaken in anticipation of litigation. See, e.g., U.S. Fid. & Guar. Co. v. Braspetro Oil Servs., Inc., No. 97-6124, 2000 WL 744369, at *12 (S.D.N.Y. June 8, 2000) ("Simply because an attorney participated in and supervised this process does not transform investigative documents into work product. By all accounts, there were complex issues to be addressed, regardless of litigation, for which an attorney knowledgeable in suretyship issues . . . could provide invaluable assistance."). Mr. Olsen was retained by American Home and was at the scene investigating the accident for the company. The fact that counsel was also present for some time at the investigation does not make the report attorney work-product. See id.

Finally, the Olsen report itself confirms that it was not prepared in anticipation of litigation. Under the heading "Subrogation," the report states: "To be determined." Generally, work-product protection is not afforded to documents prepared prior to a decision regarding whether a subrogation claim may exist. See Elgot, 1998 WL 647206, at *2 (denying work-product protection to portions of insurance adjuster's reports and noting: "The documents clearly establish that no decision about whether to pursue a subrogation claim had been made . . . . Rather, the reports of the adjusters were

5

clearly part of the usual process of evaluating and negotiating the claim . . . .").[2]

## CONCLUSION

For the reasons stated above, the Olsen report and its attachments are not protected by the work-product doctrine and must be produced. The United States' informal request to compel is **granted**. An appropriate Order accompanies this Opinion.

/s/   Mark Falk
**MARK FALK**
**United States Magistrate Judge**

Dated: October 7, 2009

---

[2] In the final paragraph of its submission, American Home refers to emails attached to the Olsen report and requests that they be afforded work-product protection. This reference is the only mention of the email attachments in its letter; no case law is cited and no argument is made with respect to the emails. As a result, American Home fails to meet its burden to show the emails are protected attorney work-product.